UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES COY WALLACE,

     Applicant,

v.                               CASE NO. 8:12-cv-2663-SDM-TGW

SECRETARY, Department of Corrections,

     Respondent.

_____/

### **ORDER**

     Wallace applies (Doc. 5) under 28 U.S.C. § 2254 for the writ of habeas corpus and challenges his convictions for both first degree murder and kidnapping, for which he is imprisoned for life.  Numerous exhibits ("Respondent's Exhibit") support the response.  (Doc. 14)  The respondent admits the application's timeliness.  (Response at 4, Doc. 13)  The respondent argues that some grounds are procedurally barred from federal review and the remaining ground lacks merit.

### **I.  BACKGROUND**[1]

     Wallace, Benjamin Hampton (the deceased victim), Daniel Briggs, and Charles Spain attended a "party" at a friend's home. Attendees, including Wallace and the victim, were highly intoxicated.  While at the party, Wallace and Briggs were seen

---

[1] This statement of facts derives from the affidavit for Wallace's arrest, which facts formed the factual basis for Wallace's guilty plea. (Respondent's Exhibit 1 at 156–57, Exhibit 3 at 165–66)

kicking the victim in the head, while the victim was laying on the ground.  At some point Wallace and Briggs asked Spain to drive the victim home.  Wallace and Briggs threw the victim into the back of Spain's station wagon and directed Spain where to drive.  During the drive Wallace, while seated in the backseat, punched the victim several times. After driving for twenty or thirty minutes, Briggs told Spain to turn onto a dirt road and stop.  Wallace and Briggs "violently yanked" the victim out of the car. Wallace grabbed a hammer from inside the car and struck the victim several times in the head.  The victim sustained "multiple blunt force trauma to the back of his head [and] injury to his right eye which caused it to collapse back into the eye socket . . . ." (Respondent's Exhibit 1 at 156)

An investigation led to the arrest of Wallace, who confessed to the murder. A grand jury returned an indictment charging Wallace with premeditated first-degree murder.  Following the advice of his very experienced appointed counsel, Wallace pleaded guilty in exchange for the state's withdrawing the possibility of a death sentence.  As agreed, Wallace was sentenced to life imprisonment for both murder and kidnapping.  After the filing of an opening brief in accord with *Anders v. California*, 386 U.S. 738 (1967), the convictions and sentences were affirmed on direct appeal. (Respondent's Exhibits 6 and 8)

Wallace timely moved for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure, and relief was denied after an evidentiary hearing, which denial was affirmed.  (Respondent's Exhibits 9, 11, 16, 17, and 20)  A later petition for leave to

file a belated appeal to allege claims of ineffective assistance of appellate counsel was denied.  (Respondent's Exhibits 22 and 23)

## II.  EXHAUSTION AND PROCEDURAL DEFAULT

The respondent argues that Grounds 1–2 and 4–5 are procedurally barred from federal review, primarily because Wallace failed to fully exhaust his available state court remedies.  An applicant must present each claim to a state court before presenting the claim to a federal court.  "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error.").  "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 32 (2004) (citing *Duncan*).

## Ground 1:

Wallace alleges that trial "counsel was ineffective for fail[ing] to fully investigate o[r] request a competency determination prior to advising [him] to plea[d], as there exist[s] a reasonable probability that he would have been found incompetent."  (Doc. 5 at 7)  In dismissing this claim the post-conviction court agreed with the state that "the

claim lacks legal sufficiency and is partially refuted by the record." (Respondent's Exhibit 15 at 122) Wallace was afforded the opportunity to amend the claim, which he did not, and he failed to include this issue on his appeal. Consequently, Wallace failed to "fairly present" this claim in the proper procedural manner by not amending this claim in the circuit court and by not appealing this claim to the district court.

## Ground 2:

In his motion for post-conviction relief Wallace alleged that trial counsel rendered ineffective assistance by advising him that he was eligible for parole after twenty-five years. In his federal application Wallace contends that the state "court applied the wrong legal standard in deciding [his] post-conviction claim." (Doc. 5 at 9) The respondent correctly argues that Wallace never presented this claim — a claim of trial court error — to the state courts.

## Ground 4:

Wallace alleges that the "trial court erred by allowing the state to amend [the] indictment from first degree 'premediated' murder to first degree 'felony' murder." (Doc. 5 at 10) The post-conviction court denied this claim, stating that "Defendant's argument can not be raised in a motion for post-conviction relief as it should have been raised, it at all, on direct appeal." (Respondent's Exhibit 10 at 65) Consequently, Wallace failed to "fairly present" this claim in the proper procedural manner.

## Ground 5:

In his motion for post-conviction relief Wallace alleged that trial counsel rendered ineffective assistance by failing to pursue an insanity defense. The

post-conviction court denied the claim on the merits, stating that, "[a]s counsel had initiated a mental health assessment, counsel cannot be deemed ineffective when Defendant, just one month later, chose to forgo any alleged defenses and enter into a plea agreement." (Respondent's Exhibit 10 at 66) Wallace omitted this claim in his appeal from the denial of post-conviction relief. Consequently, Wallace failed to "fairly present" this claim in the proper procedural manner by failing to assert the claim on appeal. *See Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated.").

\* \* \* \*

The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."); *see also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."). Wallace's failure to properly present his federal claim in the state court results in a procedural default. As a consequence, these four grounds are barred from federal review absent a showing of "actual cause and prejudice" or "manifest injustice." *See generally Coleman v. Thompson*, 501 U.S. 722, 747–51 (1991); *Murray v. Carrier*, 477 U.S.

478, 496 (1986). The basis for "cause" must ordinarily reside in something external to the defense. *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "prejudice," the applicant must show "not merely that the errors at his trial created the *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (italics original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

To meet the fundamental miscarriage of justice exception, Wallace must show constitutional error coupled with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). This exception is not available unless "petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995) (denying a certificate of probable cause).

Wallace did not reply or otherwise oppose the respondent's assertion of procedural default, and he establishes neither "cause and prejudice" nor a "fundamental miscarriage of justice." Therefore, Grounds 1–2 and 4–5 are procedurally barred from federal review and are not entitled to a determination on the merits. Ground 3 is entitled to a review on the merits.

### III.  STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir.

1998). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different

from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "To meet that standard, a prisoner must show far more than that the state court's decision was 'merely wrong' or 'even clear error.'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (quoting *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of ' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419); *accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given

effect to the extent possible under law." *Bell*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim issues a reasoned and explanatory opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 584 U.S. at 125. The State may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Wilson,* 584 U.S. at 125.

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Wallace's convictions and sentence. (Respondent's Exhibit 8) Similarly, in another *per curiam* decision without a written opinion, the state appellate court affirmed the denial of Wallace's Rule 3.850 motion for post-conviction relief. (Respondent's Exhibit 20) The state appellate court's *per curiam* affirmances warrant

deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Sec., Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002); *see also Richter*, 562 U.S. at 100 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Bishop v. Warden, GDCP*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

Wallace bears the burden of overcoming by clear and convincing evidence a state court's determination of fact. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001). The state post-conviction court's rejection of Wallace's claims warrants deference in this federal action. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 17) Wallace's federal application presents the same two grounds of ineffective assistance of counsel that he properly presented to the state courts.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

Wallace claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim, as *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*,
>
>> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
>
> *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

An applicant must prove both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and

made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.

Wallace must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Strickland*, 466 U.S. at 690.  To meet this burden, Wallace must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  *See Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1041–42 (11th Cir. 2022) (*en banc*) (brackets original) ("Applying AEDPA to *Strickland*'s prejudice standard, we must decide whether the state court's conclusion that [counsel's] performance . . . didn't prejudice [petitioner] — that there was no substantial likelihood of a different result — was so obviously wrong that its error lies beyond any possibility for fairminded disagreement.") (internal quotation marks omitted).

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic

choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91.  As *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (italics original), explains, deference is to both counsel's and the state court's decisions, recognizing that counsel decides strategic options based on both limited resources and limited time.

> [W]e owe deference to both Reeves' counsel *and* the state court. As to counsel, we have often explained that strategic decisions — including whether to hire an expert — are entitled to a "strong presumption" of reasonableness. *Harrington v. Richter*, 562 U.S. 86, 104, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). Defense lawyers have "limited" time and resources, and so must choose from among " 'countless' " strategic options. *Id.*, at 106–107, 131 S. Ct. 770. Such decisions are particularly difficult because certain tactics carry the risk of "harm[ing] the defense" by undermining credibility with the jury or distracting from more important issues. *Id.*, at 108, 131 S. Ct. 770.

The *Strickland* standard controls a claim that counsel was ineffective in recommending that a client plead guilty, *Hill v. Lockhart*, 474 U.S. 52 (1985), *Agan v. Singletary*, 12 F.3d 1012 (11th Cir. 1994), and greater evidence is needed to prove both deficient performance and prejudice if the client pleads guilty.  For the deficient performance requirement, "counsel owes a lesser duty to a client who pleads guilty than to one who decided to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright,* 748 F.2d 1505, 1508 (11th Cir. 1984).  And to prove prejudice, "the defendant must show that there is a reasonable probability that,

but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59.

Under Section 2254(d), Wallace must prove that the state court's decision "(1) [was] contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105; *see also Dunn v. Reeves*, 594 U.S. at 739 ("This analysis is 'doubly deferential' when, as here, a state court has decided that counsel performed adequately."); *Pinholster*, 563 U.S. 202 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."); *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011)); *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is 'doubly deferential.'"). "And in reviewing the work of their peers, federal judges must begin with the 'presumption that state courts know and follow the law.' Or, in more concrete terms, a federal court may grant

relief only if *every* 'fairminded juris[t]' would agree that *every* reasonable lawyer would have made a different decision." *Reeves*, 594 U.S. at 739–40 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002), and *Richter*, 562 U.S. at 101) (italics and brackets original).

The state court conducted an evidentiary hearing and denied the remaining claim of ineffective assistance of counsel based on the test established in *Strickland*. (Respondent's Exhibit 17 at 213–14)  Because the state court correctly recognized that *Strickland* governs, Wallace cannot meet the "contrary to" test in Section 2254(d)(1). Wallace instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts.  In determining "reasonableness," the statute limits federal review to determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not independently assessing whether counsel's actions were reasonable.  *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001). The presumption of correctness and the highly deferential standard of review requires that the analysis of a claim begin with the state court's analysis.

**<u>Ground 3:</u>**

Wallace alleges that trial "counsel was ineffective by misadvising [him] that he would be eligible for parole after serving 25 years on a life sentence." (Doc. 5 at 9)  The post-conviction court denied this claim as follows (Respondent's Exhibit 17 at 212–15):

> At the evidentiary hearing held on July 8, 2011, Norman Cole, the Defendant, [Defense Counsel] Robert Norgard and Rosa Bolan testified. After hearing and considering the testimony, demeanor, credibility and veracity of the witnesses, the Court finds the facts to be as follows:

Norman Cole testified that he is currently incarcerated for a murder conviction. He met the Defendant while he has been incarcerated and they were dormmates for a period of time in the county jail. Mr. Cole testified that he did not know Defendant before meeting him in jail but that Mr. Cole's brother went to elementary school with Defendant. While incarcerated they discussed their cases. It came up that while Defendant was in the court's holding cell at mandatory docketing, Mr. Cole was in the cell next to him. Mr. Cole heard, but did not see, Defendant's attorney tell Defendant that he did not have a good case, that he would probably get the death penalty, and that if he took the deal for life imprisonment he could get parole after *25* years. Mr. Cole was in the same position as Defendant with a murder charge and his attorney told him there was no parole which is why this discussion caught his attention. Mr. Cole currently has a Rule 3.850 Motion pending in which he also alleged affirmative misadvice of counsel. Mr. Cole has been convicted of 3–4 felonies.

Defendant testified that he was in Court on or around September 17, 2004, for mandatory docketing. His attorney explained to him that there was no way around a conviction and a second degree murder conviction was very unlikely. Counsel informed him that he would very likely be sentenced to death. Counsel told Defendant that he would be eligible for parole after 25 years if he agreed to a life sentence. The plea offer had been mentioned prior to September 17 but there was no discussion about parole. Defendant testified that he would have gone to trial if he knew he would not be eligible for parole. Defendant thought that parole eligibility would be automatic and that it did not have to be part of the plea agreement. That is why he did not inquire of counsel or the Court when that terminology was not included in the plea agreement. In 2005, he shared a dorm with Mr. Cole and found out Mr. Cole had heard his conversation with counsel in which he was promised parole. Defendant has 6–8 prior felony convictions.

Robert Norgard testified that he was Defendant's trial counsel. He has been a criminal defense attorney since June 1981 and has conducted 213 trials with 70 murder trials. He is a board certified criminal trial attorney. Mr. Norgard reviewed Defendant's discovery and met with Defendant a number of times. After discovery was completed, he determined that it was not a good case for trial. Mr. Norgard believed that challenging premediation [*sic*] was possible but challenging felony murder was harder especially with a confession. The murder could also be characterized as heinous, atrocious and cruel which were

aggravating factors to be considered in a death phase. The State's offer was for Defendant to plead to life without parole. If they went to trial and lost, the least Defendant could get is life without parole. Mr. Norgard had a mitigation specialist meet with Defendant to discuss the plea. Mr. Norgard told Defendant on at least two occasions that there was no parole. When in court for mandatory docketing, it was already decided that Defendant would take the plea but they needed to review the plea form prior to court. Parole was abolished in 1994. There was no reference to no parole in the plea form. Before parole was abolished, the plea form under maximum penalty would usually say "life with possibility of parole after 25 years." If there was no possibility of parole, the plea form usually did not state that specifically. It was just assumed that there was no parole.

Rosa Bolan testified that she is a mitigation specialist and a private investigator. She has been a mitigation specialist since 1998 and has worked on over 500 capital murder cases. She met with Defendant about 12 times and was often present when Mr. Norgard met with Defendant. Ms. Bolan knew of the plea offer and discussed it with Defendant. She did not tell him he was eligible for parole and counsel did not either while she was present with him. There is no such thing as parole in Florida anymore and Defendant never asked about it. If she was present in court during mandatory docketing she would have been in the holding cell area with counsel and Defendant but she does not remember if she was.

. . . .

The Court has reviewed the relevant pleadings, court files, and applicable law, and has observed and evaluated the testimony, demeanor, credibility and veracity of the witnesses at the evidentiary hearing. The Court finds the Defendant has failed to meet his burden on both prongs of *Strickland*.

The Court finds that this is a credibility issue and that the testimony of Robert Norgard was more credible. Mr. Norgard had been a criminal defense attorney for over 23 years when the Defendant entered a plea. He has handled about 70 murder trials specifically. At the time of the plea, parole had been abolished in Florida for ten years. It is not probable that an attorney, practicing criminal defense exclusively, with a large part of his trial practice being murder trials, would advise his client of a non-existent possibility. The Defendant's case was not a good one and counsel believed that it would be likely that Defendant would get the death

penalty due to aggravating factors. The plea was meant to spare Defendant's life.

The Defendant failed to inquire of his counsel and the Court why parole was not mentioned in his plea agreement. Ms. Bolan testified that Defendant never inquired about parole during their meetings. The Court does not believe that but for the possibility of parole, Defendant would not have agreed to the plea offer.

The Court does not find credible the testimony of Mr. Cole. Both Defendants are currently pursuing postconviction motions in which they allege affirmative misadvice from their attorneys. In 2005, Defendant runs into Mr. Cole who happens to remember the conversation Defendant had with his attorney in the holding cell back in September 2004. When Defendant submits his postconviction Motion in 2007, he happens to remember the name Norman Cole.

The Court finds that trial counsel was not deficient in his performance. Also, the Defendant was facing the death penalty and the odds were great that he would be sentenced accordingly. The plea was an opportunity to save Defendant's life. The Court does not find that there is a reasonable probability that Defendant would have rejected the plea and proceeded to trial but for the alleged misadvise.

The state court ruled that Wallace proved neither deficient performance nor prejudice based on the facts as determined during the evidentiary hearing, at which the state court accepted trial counsel's testimony over Wallace's testimony. Under 28 U.S.C. § 2254(e)(1), a federal court must defer to the state court's findings of fact.

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

This deference applies to a credibility determination that resolves conflicting testimony, as *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998), instructs:

> We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's]. *Coulter v. Herring*, 60 F.3d 1499, 1503 (11th Cir. 1995) (applying the statutory presumption of correctness under § 2254(d) to the state court's credibility determination), *cert. denied*, 516 U.S. 1122 (1996).

The deference is heightened when reviewing a credibility determination in a Section 2254 application. *Consalvo v. Sec'y, Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review."); *Gore v. Sec'y, Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007). *Accord Kurtz v. Warden, Calhoun State Prison*, 541 F. App'x 927, 929 (11th Cir. 2013) ("'A certain amount of deference is always given to a trial court's credibility determinations,' and a credibility determination in a case on habeas review receives heightened deference.") (quoting *Gore*).

Wallace received the benefit of a highly skilled defense attorney with substantial experience in defending a murder charge potentially involving the death penalty. Wallace presents no basis for rejecting either the state court's credibility determination or the state court's deference to Wallace's highly skilled counsel. *See Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998) ("Our strong reluctance to second guess strategic decisions is even greater where those decisions were made by experienced criminal defense counsel."). Consequently, Wallace fails to show that the state court unreasonably applied *Strickland*.

## V.  CONCLUSION

Wallace fails to meet his burden to show that the state court's decision was either an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of fact.  As *Burt v. Titlow*, 571 U.S. 12, 19–20 (2013), states:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. [86, 103] (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at [102]. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at [103] (internal quotation marks omitted).

Wallace's amended application for the writ of habeas corpus (Doc. 5) is **DENIED**.  Wallace's "Motion to Compel Ruling" (Doc. 21) is **DENIED AS MOOT**. The clerk must enter a judgment against Wallace and **CLOSE** this case.

### DENIAL OF BOTH
### A CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Wallace is not entitled to a certificate of appealability ("COA").  A prisoner seeking a writ of habeas corpus has no entitlement to appeal a district court's denial of his application.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a COA, Wallace must show

that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that reasonable jurists would "find debatable" either the merits of the grounds or the procedural issues, Wallace is entitled to neither a COA nor leave to appeal *in forma pauperis*.

A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Wallace must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on March 31, 2025.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE